UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,　　　　　　　　　　　　　　Case No. 3:24-cr-377

          Plaintiff,

   v.　　　　　　　　　　　　　　　　　　　　　MEMORANDUM OPINION
　　　　　　　　　　　　　　　　　　　　　　　　　　AND ORDER

Trevor Nettles,
          Defendant.

## I.　Introduction

Before me is Defendant Trevor Nettles's motion to dismiss the sole count of his indictment. (Doc. No. 14). The government filed a brief in opposition. (Doc. No. 15). The motion became decisional, and I took it under consideration on January 22, 2025, when counsel for Nettles represented in an email to my chambers that Nettles did not intend to file a brief in reply. For the reasons that follow, I deny Nettles's motion.

## II.　Background

On October 8, 2024, Nettles was charged by indictment with one count of knowing possession of a firearm by a person previously convicted of a felony in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). (Doc. No. 1 at 1). The indictment alleges Nettles was previously convicted of "Complicity to Trafficking in Drugs (Cocaine)" on August 21, 2019, in the Belmont County, Ohio Court of Common Pleas, and that he subsequently possessed a SCCY Model CPX-1 .9 mm caliber pistol on October 12, 2023. (*Id.*).

### III. ANALYSIS

Nettles brings both facial and as-applied challenges to his prosecution under § 922(g)(1). (*See* Doc. No. 14 at 4, 7). His facial challenge fails because the Sixth Circuit held in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), that "§ 922(g)(1) is constitutional on its face" under the Second Amendment. 113 F.4th at 662; *see also United States v. Parham*, 119 F.4th 488, 495 (6th Cir. 2024). Nettles acknowledges that "[t]he Sixth Circuit's holding in *Williams* forecloses his facial challenge before this Court." (Doc. No. 48 at 7). So, I need only evaluate whether § 922(g)(1) is constitutional as applied to him. The *Williams* framework governs Nettles's as-applied challenge, too. *See Parham*, 119 F.4th at 495 n.4; *United States v. Goins*, 118 F.4th 794, 804 (6th Cir. 2024).

**A.   The *Williams* As-Applied Framework**

Because § 922(g)(1) is facially constitutional under the Second Amendment, a "class-wide presumption" of constitutionality applies to those charged under the statute. *Williams*, 113 F.4th at 657. Therefore, a defendant bringing an as-applied challenge bears the burden "to show he's *not* dangerous;" the government need not affirmatively establish a defendant is dangerous enough to face prosecution under § 922(g)(1). *Id.* at 662 (emphasis added).[1] The dangerousness analysis "focus[es] on each individual's specific characteristics" and takes into consideration "the individual's

---

[1] *Williams* addressed a post-conviction challenge to § 922(g)(1), and Nettles brings his challenge pre-trial. But nothing in *Williams* suggests a fundamentally different inquiry should apply to a pre-trial Second Amendment challenge. Just as "a court can accept prior convictions without an evidentiary hearing or jury fact finding" in the sentencing context, *Williams*, 113 F.4th at 662 (citing *Almendarez-Torres v. United States*, 523 U.S. 224, 228–39 (1998)), so must I "view the [i]ndictment's factual allegations as true" in evaluating Nettles's motion to dismiss. *Costello v. United States*, 350 U.S. 359, 363 (1956). As I explain below, the nature of the evidence is somewhat different, because, unlike in *Williams*, there is no presentence report on which I can rely. *See Williams*, 113 F.4th at 662. Instead, I take the truth of the indictment's allegations about Nettles's prior convictions as a starting point, but because *Williams* requires a "fact-specific" inquiry that depends "on the unique circumstances of the individual defendant," I consider other relevant evidence, too. *Id.* at 660.

2

entire criminal record." *Id.* at 657. This includes "any evidence of past convictions in the record, as well as other judicially noticeable information." *Id.* at 660.

But this is no "categorical" inquiry. *Williams*, 113 F.4th at 660 (citing *Mathis v. United States*, 579 U.S. 500, 504 (2016), by way of counterexample). Instead, "[t]he dangerousness determination will be fact-specific, depending on the unique circumstances of the individual defendant." *Williams*, 113 F.4th at 660; *see also Goins*, 118 F.4th at 805 (considering the "totality of the facts" related to the defendant's criminal history). Beyond "the fact of conviction alone," a court "may consider how an offense was committed." *United States v. Morton*, 123 F.4th 492, 499 (6th Cir. 2024). This task also involves the exercise of judicial common sense, such as a court's "informed judgment about how criminals commonly operate." *Williams*, 113 F.4th at 660 (internal citation and quotation marks omitted).

*Williams* analyzed three classes of prior convictions. First, "crimes against the person," a category including many common law felonies like rape, murder, and robbery, "speak directly to whether a person is dangerous" in the Second Amendment context. *Id.* at 658. While *Williams* formally left as an "open question" whether "crimes in this bucket are dispositive," a defendant with a prior conviction for a crime directly involving physical harm or a serious physical threat carries an "extremely heavy" burden to disprove their presumed dangerousness. *Id.* In fact, dangerousness may be "self-evident" from a prior conviction falling in this category. *Id.* at 660. For example, the Sixth Circuit has concluded that a defendant previously convicted of an "attempted second-degree murder offense [which] involved shooting a young child" was "exactly the type of individual our history and tradition allow Congress to disarm." *Parham*, 119 F.4th at 496.

The second class of offenses are "not strictly crimes against the person" but "may nonetheless pose a significant threat of danger. These crimes do not always involve an immediate

3

and direct threat of violence against a particular person," but "most of [them] put someone's safety at risk, and thus, justify a finding of danger." *Williams*, 113 F.4th at 659.

One example is "drug trafficking," which "poses a danger to the community" and "often leads to violence." *Williams*, 113 F.4th at 659 (quoting *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010)) (internal citation and quotation marks omitted). Another is burglary, which "creates the possibility of a violent confrontation between the offender and occupant." *Williams*, 113 F.4th at 659 (quoting *Taylor v. United States*, 495 U.S. 575, 588 (1990)) (internal quotation marks omitted). Consistent with this rationale, the Sixth Circuit has found that multiple prior convictions for driving under the influence, including one incident resulting in a motor vehicle accident, evinced a "dangerous pattern" of behavior that "pose[d] a danger to public safety" and thus helped to justify disarming the defendant under § 922(g)(1). *Goins*, 118 F.4th at 804.

The final category of crimes includes those which "cause no physical harm to another person or the community." *Williams*, 113 F.4th at 659. Unlike the first two classes of offenses, "many of these crimes," such as mail fraud or making false statements, "don't make a person dangerous." *Id.*

In all, the gravamen of the dangerousness analysis originating in *Williams*'s is physical harm. A criminal record containing a conviction for an offense directly involving significant physical harm to one or more persons is very likely to make that defendant dangerous enough to be disarmed under the Second Amendment, while a record involving only convictions that are highly attenuated from such harm is unlikely to render that defendant dangerous. *See Williams*, 113 F.4th at 657-60. Further, a pattern of conduct risking or causing physical harm strengthens the inference that a defendant is dangerous enough to be prosecuted under § 922(g)(1). *See Goins*, 118 F.4th at 804; *Parham*, 119 F.4th at 495-96.

4

**B.      Evidence of Nettles's Specific Characteristics**

Before determining whether Nettles has met his burden to show he is not dangerous, I explain what kind of evidence I may and may not consider under *Williams*. I noted above that the procedural context of *Williams* is not a perfect fit for this case because *Williams* involved a post-sentencing challenge to a § 922(g)(1) conviction, while this case involves a pre-trial motion to dismiss the indictment. *See Williams*, 113 F.4th at 662. As a result, no facts have yet been found by a judge or jury, and I also do not have the advantage of a thorough presentence report to inform my analysis. *See id.*

But at the motion to dismiss stage, I must treat the allegations in the indictment as true. *See, e.g.*, *United States v. Roman*, 17 F. Supp. 3d 706, 708 (S.D. Ohio 2014). *Williams* places "the burden . . . on [the defendant] to show he's not dangerous." *Williams*, 113 F.4th at 662. So, even though I view the allegations in the indictment as true by default, Nettles may point to evidence of his "specific characteristics" to rebut the presumption that he is dangerous enough to face prosecution under § 922(g)(1). *Id.* at 657.

The *Williams* court "recognize[d] that courts may wish to consider information beyond criminal convictions when assessing a defendant's dangerousness," noting that the Supreme Court, in *United States v. Rahimi*, 144 S. Ct. 1889 (2024), had considered a state-court-issued civil restraining order. *Williams*, 113 F.4th at 658 n.12 (citing *Rahimi*, 144 S. Ct. at 1895). This includes the judicially-noticeable information available on the dockets for Nettles's various convictions. *See Williams*, 113 F.4th at 657, 658 n.12; *Goins*, 118 F.4th at 804 (considering the defendant's four prior DUI convictions, two public intoxication convictions, and two driving with a suspended license convictions, including the fact that one of the DUI convictions "resulted in a motor vehicle accident"); *Parham*, 119 F.4th at 496 (considering the fact that the defendant's "attempted second-

5

degree murder offense involved shooting a young child"); *Morton*, 123 F.4th at 500 (approving the district court's reliance on "state court judgments . . . attached as exhibits").

Nettles has been convicted of four felonies. In 2016, he pled guilty to one count of wanton endangerment involving a firearm, in violation of West Virginia Code § 61-7-12, in the Ohio County, West Virginia Circuit Court. (*See* Doc. No. 15 at 8); *State v. Trever Da'Sean Nettles*, Conditional Plea Order at 1, 4, Case No. 15-F-74 DJS (Ohio Cnty. Cir. Ct. Jan. 8, 2016). The offense conduct took place in November of 2015. *See id.* Under § 61-7-12, it is a felony to "wantonly perform[] any act with a firearm which creates a substantial risk of death or serious bodily injury to another," W. Va. Code § 61-7-12.

The next year, in September of 2017, Nettles pled guilty to the unlawful concealed carry of a handgun, in violation of Ohio Revised Code § 2923.12(A)(2), in the Belmont County, Ohio Court of Common Pleas. *State v. Trever Da'sean Nettles*, Non-document entry, Case No. 17-CR-0198 (Belmont Cnty. C.P. September 25, 2017). A month later, in October of 2017, Nettles again pled guilty to the unlawful concealed carry of a handgun, in violation of Ohio Revised Code § 2923.12(A)(2), this time in the Lucas County, Ohio Court of Common Pleas. *See State v. Trever Dasean Nettles*, Non-document order, Case No. G-4801-CR-0201702399 (Lucas Cnty. C.P. October 30, 2017). These offenses are both fourth-degree felonies under Ohio law. *See State v. Trever Da'sean Nettles*, Non-document entry, Case No. 17-CR-0198 (Belmont Cnty. C.P. September 25, 2017) *and State v. Trever Dasean Nettles*, Non-document order, Case No. G-4801-CR-0201702399 (Lucas Cnty. C.P. October 30, 2017).

Finally, in July of 2019, Nettles pled guilty to aiding or abetting the trafficking of cocaine, in violation of Ohio Revised Code §§ 2923.03(A)(2) and 2925.03(A) & (C)(4)(e), in the Belmont County Court of Common Pleas. *See State v. Trever Da'sean Nettles*, Non-document entry, Case No. 19-CR-142 (Belmont Cnty. C.P. July 26, 2019). This is a second-degree felony. *See id.* He was sentenced to a term of between four and six years in prison. *See State v. Trever Da'sean Nettles*, Non-

6

document entry, Case No. 19-CR-142 (Belmont Cnty. C.P. August 21, 2019). The subsection under which he was convicted indicates he aided or abetted the trafficking of between 20 and 27 grams of cocaine. *See* Ohio Rev. C. § 2925.03(C)(4)(e).[2]

Nettles also asks me to consider an academic article and a proposed amendment to the United States Sentencing Guidelines to support the proposition that his relatively young age at the time of some of his convictions renders those offenses less probative of his dangerousness under *Williams*. (Doc. No. 14 at 6).[3]

Under the guidance given in *Williams*, crediting these arguments would require me to take judicial notice of facts related to the effect of continuing brain development on a young person's behavior. *Williams* left "the question of what information is relevant" to the dangerousness inquiry "for another day." *Williams*, 113 F.4th at 658 n.12; *see also United States v. Bell*, Case No. 2:20-cr-20336, 2024 WL 4589812 at *5 n.1 (E.D. Mich. Oct. 28, 2024) (stating that "*Williams* did not provide any guidance" on the question of whether a court may consider "circumstances underlying the indictment"). But it did focus on facts that are "judicially noticeable." *Williams*, 113 F.4th at 660; *see* Fed. R. Evid. 201. A fact is judicially noticeable if it "is not subject to reasonable dispute because it . . . is generally known within the trial court's territorial jurisdiction or . . . can be

---

[2] The case captions for Nettles's prior convictions spell his first name "Trever" rather than "Trevor," and they variously spell his middle name "Dasean" and "Da'sean." Despite these minor differences in spelling, Nettles does not dispute that he is the person prosecuted and convicted in any of these cases. (*See* Doc. No. 14 at 5)

[3] Nettles cites: Amendments to the Sentencing Guidelines (Preliminary) at 15-16 (April 17, 2024), (available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202404_prelim-rf.pdf) *and* Arain, Mariam, *et al.*, *Maturation of the adolescent brain*, 9 Neuropsychiatric Disease & Treatment 449-61 (2013) (available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3621648/). The proposed amendments to the Sentencing Guidelines were codified in the Federal Register at: Sentencing Guidelines for United States Courts, 89 Fed. Reg. 36853 (May 3, 2024).

accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

I explained why I may not consider the specific academic article and Guidelines amendments on which Nettles relies in *United States v. Norris*, Case No. 3:23-cr-572, 2024 WL 4816246 at *4-5 (N.D. Ohio Nov. 18, 2024). The academic article on the topic of brain development invokes the kind of specialized knowledge appropriate for expert testimony under Federal Rule of Evidence 702(a) but inappropriate for a court's summary consideration. *Norris*, 2024 WL 4816246 at *5. As for the proposed amendments, "the issuance of a proposed rule is not enough, by itself, for me to take judicial notice of certain statements within it." *Id.*; *cf. Changizi v. Dep't of Health and Human Servs.*, 82 F.4th 492, 498 n.7 (6th Cir. 2023) (explaining that the court "could conceivably take judicial notice of the fact that an analogous case is ongoing in another circuit" but could not "take judicial notice of the truth of assertions detailed in various judicial filings").

Moreover, while the amendment in question indicates a defendant's youthfulness is a factor that may warrant leniency at sentencing, nothing in the Guidelines or the briefing offered here explains how I might apply that general principle to Nettles's specific case. *See* Sentencing Guidelines for United States Courts, 89 Fed. Reg. 36853, 36859 (May 3, 2024) ("[a] downward departure . . . may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses"). Nettles himself acknowledges that "the precise age of development for each person would need to be determined," but he provides no ready way to do so. (Doc. No. 14 at 6). Therefore, following *Williams*'s guidance, and given the briefing and argument by the parties here, I will only consider Nettles's criminal record and any underlying facts to the extent they are judicially noticeable. *See United States v. Golden*, Case No. 3:23-cr-94, 2025 WL 268364 at *4-5 (N.D. Ohio Jan. 22, 2025).

8

C.     **Applying *Williams* to Nettles**

Nettles has failed to rebut the presumption of dangerousness that attaches because of his prior convictions. Nettles, who is 27 years old, has been convicted of four felonies in less than a decade: wanton endangerment with a firearm in 2016, the unlawful concealed carry of a handgun twice—in the span of two months—in 2017, and aiding and abetting cocaine trafficking in 2019. Each of these offenses contributes to a finding of dangerousness.

To start, the record of Nettles's wanton endangerment conviction indicates he used a "firearm" to "create[] a substantial risk of death or serious bodily injury to another." W.Va. C. § 61-7-12. That is, his wanton use of a gun caused "an immediate and direct threat of violence against a particular person." *Williams*, 113 F.4th at 659. Thus, this conviction is "strong evidence" that Nettles is dangerous enough to be denied access to firearms consistent with the Second Amendment. *Id.* at 658.

Nettles suggests his wanton endangerment conviction should be given less weight in the dangerousness analysis because it falls into *Williams*'s "second category." (Doc. No. 14 at 5). This is unpersuasive for two reasons. First, *Williams* instructed lower courts to conduct a "fact-specific" and "commonsense" inquiry rather than making rigid legal determinations based on "bright categorical lines." *Williams*, 113 F.4th at 660. So, the formal bucket into which Nettles's wanton endangerment offense falls is not "totally dispositive" of the dangerousness question, in either direction. *Id.* at 658.

Second, to the extent Nettles attempts to cast his wanton endangerment conviction as an offense involving a more diffuse—and less serious—threat of physical harm, that is at odds with the specific circumstances of his offense. The West Virginia statute prohibits wanton firearms behavior threatening death or serious bodily injury to "another" person—that is, a specific victim. W.Va. Code § 61-7-12. *Williams* held that a prior conviction for acts or threats of physical violence "against

9

the body of another human being," like Nettles's 2016 conviction, can make someone dangerous enough to be prosecuted under § 922(g)(1). *Williams*, 113 F.4th at 663. Further, in *United States v. Morton*, the Sixth Circuit concluded that the defendant's wanton endangerment conviction contributed to a finding that he was sufficiently dangerous under *Williams*. 123 F.4th 492, 499 (6th Cir. 2024). Likewise, I conclude that Nettles's 2016 conviction for wanton endangerment with a firearm is strong evidence of his dangerousness.

Nettles's concealed carry convictions are also probative of his dangerousness under *Williams*. These offenses do not involve the immediate threat of violence against a specific person, but *Williams* indicated that a prior unlawful act of firearms possession can support a finding of dangerousness. *See Williams*, 113 F.4th at 662 (explaining that "the government could've pointed to" the defendant's prior felon-in-possession conviction "to show he's dangerous").

Here, Nettles's two unlawful concealed carry convictions in quick succession indicate his willingness to disregard Ohio's firearms possession laws. *See Golden*, 2025 WL 268364 at *5 ("Golden's two prior firearm possession convictions demonstrate his repeated willingness to flout Ohio's gun laws and therefore support the presumption of dangerousness in this case"). This "pattern" of irresponsible firearms behavior is evidence of dangerousness under *Williams*. *Goins*, 118 F.4th at 804; *cf. United States v. Flores*, Case No: 24-20579, 2025 WL 348390 at *2 (E.D. Mich. Jan. 30. 2025) (finding § 922(g)(1) constitutional as-applied to the defendant because of his single prior unlawful concealed carry conviction under Michigan state law).

Finally, Nettles's 2019 drug trafficking conviction "justif[ies] a finding of danger." *Williams*, 113 F.4th at 659. *Williams* explained that drug trafficking is "a prime example" of an offense that "while not strictly [a] crime[] against the person, may nonetheless pose a significant threat of danger." *Id.* Drug trafficking "poses a danger to the community" writ large and "often leads to

10

violence" by creating the conditions for a violent confrontation. *Id.* (internal citations and quotation marks omitted).

While Nettles was convicted of aiding or abetting drug trafficking rather than trafficking drugs *per se*, his behavior nevertheless contributed to and enabled the distribution of cocaine. *See State v. Trever Da'sean Nettles*, Non-document entry, Case No. 19-CR-142 (Belmont Cnty. C.P. July 26, 2019). As *Williams* explained, and as other district courts have concluded, this drug trafficking conviction supports a finding of dangerousness. *See, e.g.*, *United States v. Hales*, Case No: 23-cr-20645, 2024 WL 5168632 at *4 (E.D. Mich. Dec. 19, 2024) (finding that the defendant's three prior drug trafficking convictions rendered him "dangerous" under *Williams*, and noting that "it is difficult to discern what exactly might be a non-dangerous drug-trafficking conviction if drug trafficking is inherently a dangerous crime, as held by the Sixth Circuit").

Nettles insists I should discount the probative value of his oldest offenses—especially the 2016 wanton endangerment conviction—because they "predate this case by several years." (Doc. No. 14 at 6). I have already acknowledged that the passage of time can reduce the probative value of a prior conviction in the *Williams* context. *See Norris*, 2024 WL 4816246 at *7. Several other district courts have made this commonsense observation as well. *See, e.g.*, *United States v. Jennings*, Case No. 2:24-CR-20173-TBG-EAS, 2024 WL 4560602 at *4 (E.D. Mich. Oct. 24, 2024); *United States v. Green*, No. 23-cr-20506, 2024 WL 4469090 at *4 (E.D. Mich. Oct. 10, 2024).

But in many of those cases, the indicted offense and a prior conviction were separated by much longer periods of time—often decades. *See, e.g.*, *Jennings*, 2024 WL 4560602 at *4 (27 years); *United States v. Buford*, Case No. 2:23-CR-20375-TGB-EAS, 2024 WL 5239444 at *6 (E.D. Mich. Dec. 27, 2024) (28 years). More importantly, Nettles did not maintain a clean record after his wanton endangerment conviction. Instead, he was convicted of three more felonies: two in 2017

and one in 2019. *Cf. Jennings*, 2024 WL 4560602 at *5 (citing the defendant's "extensive" criminal history since his 1997 armed robbery conviction in rejecting his Second Amendment argument).

The passage of four years between Nettles's 2019 drug trafficking conviction and his alleged 2023 firearms possession behavior also does not rebut the presumption of dangerousness—particularly because he spent a few of those years incarcerated for his 2019 conviction. *See United States v. Stewart*, Case No. 3:24 CR 109, 2025 WL 277697 at *2 (N.D. Ohio Jan. 23, 2025) (discounting the passage of time the defendant "spent serving [a] sentence"); *United States v. Smith*, No. 1:23-cr-83, 2024 WL 4453270 at *3 (E.D. Tenn. Oct. 9, 2024) (same).

Moreover, Nettles offers "no countervailing evidence" of his rehabilitation or good behavior following any of his convictions. *United States v. Vaughn*, Case No. 23-5790, 2024 WL 4615853, at *2 (6th Cir. Oct. 30, 2024); *see also United States v. Johnson*, Case No. 24-20429, 2024 WL 4729467 at *5 (E.D. Mich. Nov. 8, 2024) (citing the "dearth of evidence indicating [the defendant's] reformation"). In this case, the passage of seven years between Nettles' first felony conviction and the firearms possession behavior alleged in the Indictment does not undermine the probative value of his prior felonies.

As *Goins* underscored, a court must consider a defendant's record holistically. *See* 118 F.4th at 804. Nettles's criminal record speaks for itself. After being convicted in 2016 for wantonly using a gun to threaten another person, he pled guilty in 2017 to violating Ohio's concealed carry law—twice. Less than two years later, in 2019, he pled guilty to aiding and abetting cocaine trafficking. As I explained, each of these felonies supports a finding of dangerousness. Taken together, these convictions show Nettles engaged in a "dangerous pattern" of unlawful firearms and drug trafficking behavior that threatened public safety. *Goins*, 118 F.4th at 804. Absent any affirmative evidence showing otherwise, Nettles' "criminal record demonstrates dangerousness." *Morton*, 123 F.4th at

500. I conclude Nettles has failed to carry his burden and that 18 U.S.C. § 922(g)(1) is constitutional as applied to him.

## IV. CONCLUSION

For the reasons stated above, I deny Nettles's motion to dismiss. (Doc. No. 14).

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge
